Slip Op. 14 - 85

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| GOLDEN DRAGON PRECISE COPPER TUBE GROUP, INC.; HONG KONG GD TRADING CO., LTD.; GOLDEN DRAGON HOLDING (HONG KONG) INTERNATIONAL, LTD.; and GD COPPER (U.S.A.) INC., | : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, | : : | Consol. Court No. 14-00116 |
| Defendant, | : : | |
| and | : : | |
| CERRO FLOW PRODS., LLC; WIELAND COPPER PRODUCTS, LLC; MUELLER COPPER TUBE PRODUCTS, INC; and MUELLER COPPER TUBE CO., INC., | : : : : : | |
| Defendant-Intervenors. | : : | |

## MEMORANDUM & ORDER

[Granting defendant's motion for leave to consider ministerial error allegations.]

Dated: July 18, 2014

*Kevin M. O'Brien* and *Yi Fang*, Baker & McKenzie, LLP, of Washington DC, for the plaintiffs.

*Jennifer E. LaGrange*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director.  Of Counsel on the brief was *Daniel J. Calhoun*, Senior Attorney, Office of the Chief

Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Thomas M. Beline*, *Jack A. Levy*, and *Jonathan M. Zielinski*, Cassidy Levy Kent (USA) LLP, of Washington DC,  for the defendant-intervenors.

Musgrave, Senior Judge:  Before the court in this consolidated action is a motion submitted by the defendant United States Department of Commerce, International Trade Administration ("Commerce" or "the Department") seeking leave to issue and publish an amended determination that incorporates corrections to certain alleged "ministerial errors"[1] in the dumping margin calculation in *Seamless Refined Copper Pipe and Tube From the People's Republic of China*, 79 Fed. Reg. 23324 (Apr. 28, 2014) (final admin. rev. results) ("*Final Results*").  *See* USCIT R. 7(b).

After publication of the *Final Results*, the plaintiffs ("Golden Dragon") timely submitted comments to Commerce the same day (April 28, 2014) pursuant to 19 U.S.C. § 1675(h) and 19 C.F.R. § 351.224(c).  Golden Dragon alleged that Commerce ministerially erred in calculating freight costs used in determining the foreign market value of their products, and that Commerce should have applied a different distance cap for the freight value of copper cathode input used to produce subject merchandise.  The specific allegation was that (a) Commerce should adjust import surrogate values by adding the shorter of (i) the reported distance from domestic suppliers of copper cathode to Golden Dragon's factory or (ii) the reported distance from the nearest port to

---

[1]  The term "ministerial error" is defined in both statute and regulation as "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the Secretary considers ministerial."  19 U.S.C. § 1673d(e) (2006); 19 C.F.R. § 351.224(f) (2009).  They "are by their nature not errors in judgment but merely inadvertencies." *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995).

Golden Dragon's factory; (b) Commerce had in fact adjusted import surrogate values by adding the

reported distance from the nearest sea port (rather than inland port) to Golden Dragon's factory; and

(c) Commerce should have used the distance to the nearest inland port.

Responding to this allegation, the domestic petitioners ("Cerro Flow") argued to

Commerce on May 1, 2014 that Golden Dragon's alleged error was methodological, not ministerial,

and that Commerce should therefore reject it.  At the same time, Cerro Flow's submission raised an

additional ministerial error, albeit beyond the time specified in 19 C.F.R. §351.224(c)(2) for raising

such an allegation.[2]  Cerro Flow's specific allegation, according to the government, is that Golden

Dragon's freight value claim revealed a different ministerial error: Commerce had announced it

would use a distance cap for the freight value of copper cathode input based on the distance between

Golden Dragon's factory and the nearest sea port in instances where the weighted-average distance

from Golden Dragon's factory to its copper cathode suppliers was greater than the distance between

Golden Dragon's factory and the nearest sea port, and Cerro Flow argued Commerce had not applied

this cap for copper cathode purchases from nonmarket economy sources.

Prior to investigating these alleged ministerial errors (or implementing any

corrections), Commerce was divested of jurisdiction when Golden Dragon filed the present action

challenging the *Final Results*.  *See  Zenith Elecs. Corp. v. United States*, 884 F.2d 556, 561-62 (Fed.

Cir. 1989).

---

[2] *See* 19 C.F.R. § 351.224(c)(2): "A party to the proceeding must file comments concerning ministerial errors within five days after the earlier of: (i) The date on which the Secretary released disclosure documents to that party; or (ii) The date on which the Secretary held a disclosure meeting with that party."

*Discussion*

Congress intended Commerce to consider and correct appropriate ministerial errors promptly.  *See*, *e.g.*, *NTN Corp. v. United States*, 32 CIT 1283, 1285, 587 F. Supp. 2d 1313, 1315 (2008) (citing 19 U.S.C. §1675(h)).  But as this motion illustrates, a regulatory policy of "normally" correcting ministerial errors "within 30 days" after publication of final results, *see* 19 C.F.R. §351.224(e), is rendered problematic (along with other aspects of these types of international trade proceedings) by a separate policy that insists upon issuance of liquidation instructions to U.S. Customs and Border Protection 15 days after publication of the final results of administrative review. *See*, *e.g.*, 79 Fed. Reg. at 23325.

A.  Arguments

Commerce avers that the court's discretion on a motion for leave to correct ministerial errors and publish amended final results in accordance with 19 U.S.C. §1675(h) should focus upon whether allowing the motion would prejudice either party or result in undue delay or expense.  *See*, *e.g.*, *NTN Corp. v. United States*, 32 CIT 1283, 1285, 587 F. Supp. 2d 1313, 1316-17 (2008); *SGL Carbon LLC v. United States*, 36 CIT ___, ___, 819 F. Supp. 2d 1352, 1363 (2012).  Commerce contends the parties "all agree" that it should have, but did not, impose a distance cap for the freight value of copper cathode input, as demonstrated by the comments received to date, and it takes the position that it wishes to consider this allegation as well as allegations regarding the amount of the freight distance cap to determine whether the allegations raised constitute methodological decisions (which must remain unchanged) or ministerial errors (which would be corrected through amended final results).  Commerce also takes the position that Cerro Flow's allegation "would be implicated

were Commerce to correct for the ministerial error alleged by Golden Dragon." Def's Mot. for

Leave at 3.  Accordingly, Commerce argues for leave to allow it to: (a) finish investigating the

parties' ministerial error allegations; and (b) if necessary, publish amended final results pursuant to

19 U.S.C. § 1675(h) and 19 C.F.R. § 351.224(e).

   Corrections that are made will affect the results of review with respect to the margin

calculation for Golden Dragon.  Commerce argues, nonetheless, that neither Golden Dragon nor

Cerro Flow will be prejudiced by allowing consideration of the allegations and amendment of the

*Final Results* if necessary:  both parties have already had a full opportunity to review and comment

on the *Final Results*, and they may still challenge the *Final Results* by amending their complaints

in the above-captioned actions or filing separate actions challenging the amended *Final Results*.

Commerce contends that granting this motion will promote judicial efficiency and conserve

resources, because it will improve the accuracy of the *Final Results*, and it will allow the parties and

the Court to focus on methodological inquiries rather than simple mathematical mistakes.

   Golden Dragon opposes the motion for leave.  It explains that it filed the present

action with the court on May 12, 2014 in part to prevent the premature liquidation of the covered

entries because Commerce had taken no action on its request for ministerial-error correction after

it filed that request with Commerce on April 28, 2014, and that Commerce itself has therefore

"caused" the timing of the filing of the present action with the court by stating that it intended to

issue assessment instructions within 15 days of publication of the *Final Results* in the Federal

Register.  Golden Dragon argues the issue of ministerial errors in this review only arose because it

was the only party that raised the issue on a timely basis, and that the petitioners used its (Golden

Dragon's) submission to introduce "new" allegations of ministerial errors raised after the deadline

required by 19 C.F.R. §351.224 for alleging ministerial errors.  As such, Golden Dragon does not

believe Commerce's motion represents a proper process to resolve such alleged errors or that any

of the arguments advanced by Commerce warrant sending the issues raised in the motion for leave

back to the agency at this stage of the proceeding.  Golden Dragon emphasizes that the petitioners

do *not* agree that the error raised by Golden Dragon in its April 28, 2014 submission is a ministerial

error, and by the same token Golden Daragon does not agree that the alleged error cited by the

petitioners should be considered at all at this stage of the case in view of the fact that deadline for

alleging ministerial errors by Commerce expired on April 28, 2014.   Golden Dragon further

emphasizes that Commerce itself does not take a position in its motion as to whether any error has

been made, and if so, which error or errors require correction, but rather it seeks leave to "consider

these allegations" to determine whether they constitute methodological errors (which the government

states "must remain unchanged") or ministerial errors.

> Regarding Commerce's case support, Golden Dragon contends that *SGL Carbon* and
*NTN Corp.* are distinguishable.  In *SGL Carbon*, the government had already investigated the

allegations and had agreed with the respondents therein that ministerial errors had been made and

should be corrected, whereas in the present case no such conclusion has been reached.  *SGL Carbon,*

36 CIT at ___, 819 F. Supp 2d at 1358.  Similarly, Golden Dragon contends, in *NTN Corp.* the court

was presented with a level of certainty far greater than that of the present case.  In that case, "all

parties . . . appear to agree that the packing expense adjustment is in need of some type of

recalculation".  *NTN Corp.*, 32 CIT at 1286, 587 F. Supp. 2d at 1316.  Here, Golden Dragon and the

petitioners each alleged a different ministerial error and do not agree with each other, a fact the

government notes in its motion.  See, *e.g.*, Def's Mot. for Leave at 4 (the petitioners "contended that

Golden Dragon's freight value claim unveiled a different ministerial error regarding the freight factor

of production").  Golden Dragon also points out that *NTN Corp*. reasoned that potential delay caused

by granting the government's motion would not be significant because the government had already

been prepared to publish the amended final results with a very specific timeframe (*i.e.*, within 17

calendar days of the court's order).  *See* 32 CIT at 1287, 587 F. Supp. 2d at 1316-17.

      Lastly, Golden Dragon contends the government's final argument -- that there will

be no prejudice or undue delay because the parties will have an opportunity to challenge any

amended final results, should Commerce decide to make a change -- misses the point of the

administrative review process.  Commerce published its preliminary results in this review on

November 21, 2013, and, as such, has had five months to consider the proper methodology to use

as part of the final determination.  Golden Dragon contends now is "long past the time" for

Commerce to be considering whether errors are methodological or ministerial:

> This case is now before this court to resolve all issues in dispute, methodological or otherwise.  If this Court sends this case piecemeal back to the Department, one of four outcomes would likely result.  First, the Department might conclude that no errors occurred, in which case there would have been introduced undue delay since those issues will be litigated before this Court.  Second, the Department might conclude that errors occurred, but the errors were methodological and will not be corrected by the Department, in which case there would have been introduced undue delay since those issues will be litigated before this Court.  Third, the Court might correct Golden Dragon's alleged errors, which is the only proper result since Golden Dragon was the only party to properly raise ministerial errors within the Department's deadline.  While this has some benefit, Golden Dragon is prepared to resolve those issues in the context of this Court proceeding and not take the further time required by the Department's motion.  Finally, the Department could decide to correct Petitioners alleged ministerial errors, in which case the parties will

not only litigate the errors *per se*, but also the correctness of the Department's actions given that Petitioners' allegations of error were raised well after the deadline set forth in 19 C.F.R §351.224. In other words, the only result that is procedurally correct and does not introduce undue delay is the correction of Golden Dragon's alleged ministerial errors. Given that Golden Dragon raised these errors on April 28, 2014 and the Government still has not even decided whether they are methodological or ministerial, Golden Dragon submits that this Court is the proper forum to decide this issue as part of the overall disposition of the dispute.

Pls' Response at 7-8.

However that may be, Cerro Flow also disagrees that the error alleged by Golden Dragon is ministerial as the term is defined in 19 U.S.C. § 1675(h) and 19 C.F.R. § 351.224(e) and instead believes that the only ministerial error that exists is the one it identified to Commerce. Thus Cerro Flow believes that Commerce should be permitted to conclude its analysis of whether a ministerial error occurred, and if one did, to correct it by publishing amended final results of administrative review.

The basis for Cerro Flow's position is two-fold. First, it agrees with the government that no party will be prejudiced by its motion because either party may still challenge any amended final results of administrative review that Commerce may issue; despite there being no such motion to amend a complaint (as yet), the government's motion for leave appears to consent to such amendment if the need should arise for either party. *See* Def's Mot. for Leave at 4. Thus, Cerro Flow contends, even though, Golden Dragon may be "procedurally barred" from raising their claim on appeal by the application of exhaustion, both parties will still be free to amend their complaints to include their claims should Commerce disagree with their ministerial error allegations.

Second, Cerro Flow contends the fact that Commerce may need additional time to determine whether a ministerial error occurred is not a reason for not granting the motion for leave,

because if Commerce had not timely moved for leave, under the appellate court's decision in

*American Signature, Inc. v. United States*, 598 F. 3d 816 (Fed. Cir. 2010), Commerce may have been

precluded from ever correcting the ministerial error, because *American Signature* affirmed

Commerce's interpretation of its regulations that it "may not correct ministerial errors in final results

of administrative reviews . . . if those errors are discovered after the expiration of the 30-day deadline

for seeking judicial review of those results."  598 F. 3d 827.

### B.  Analysis

Considering the parties' arguments and the point of this whole "exercise", the court

is guided by several general principles. First and foremost is the court's jurisdiction and the

reviewing standard of substantial evidence on the record.  *See* 28 U.S.C. §1581(c); 19 U.S.C.

§1516a(b)(1)(B)(i).  Contrary to Golden Dragon's argument, it is questionable whether the court at

this stage would have jurisdiction to decide ministerial error allegations on a record with respect to

which there has been no "final" determination.  *Cf. Diamond Sawblades Manufactuers' Coalition*

*v. United States*, Slip Op. 10-23 at 11-12 (Mar. 11, 2010) (considering argument that ministerial

error allegation is outside the scope of pleadings on the case).  The allegations may or may not

concern mere ministerial errors.  In the event administrative consideration of the parties' allegations

of ministerial error veers into consideration of substantive matter(s) and winds up with substantive

alteration of the "final" published results here being challenged, then it becomes arguable whether

the results presently before the court are to be considered "final" within the meaning of 19 U.S.C.

§1516a(a)(2)(A)(i)(I) and 19 U.S.C. §1516a(a)(2)(B)(iii).

Second, even if the court is technically now possessed of jurisdiction over the case, these ministerial error allegations are not "originally cognizable"[3] at this stage, as exhaustion cautions against usurping administrative functions by not affording Commerce the first opportunity to consider the ministerial error allegations. *McKart v. United States*, 395 U.S. 185, 194-95 (1969). Although Rule 60(a) of the rules of the court allow for correction of a clerical mistake or a mistake arising from oversight or omission whenever one is found in a part of the record for review, the court is not in the best position to decide the question in the first instance of whether the parties' ministerial error allegations to Commerce are, in fact, errors ministerial.

Third, the primary basis for Golden Dragon's opposition to the defendant's motion for leave appears to be with respect to the allegedly "new" or out-of-time ministerial allegation raised by Cerro Flow. Golden Dragon's "concern," to the extent it is legally cognizable at this stage,[4] is premature and not in itself a basis for denying the defendant's motion. Such concern will need to abide the due course of Commerce's consideration of the process by which Cerro Flow's allegation was raised, as well as, if necessary as a result of due course, the allegation itself.

---

[3]    *See United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63-64 (1956) ("'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views"); *Borlem S.A. - Empreedimentos Industriais v. United States*, 13 CIT 231, 234, 710 F. Supp. 797, 799 (1989).

[4]    *Cf. American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 539 (1970) ("[i]t is always within the discretion of . . . an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it") (internal quotes and citations omitted).

Fourth, "the antidumping law's underlying purpose of using the best available information to determine the most accurate dumping margins is furthered by the correction of the ministerial error." *Shandong Huarong General Corp. v. United States*, 25 CIT 834, __ 159 F.Supp.2d 714, 729 (2001).

*Conclusion*

For the above reasons, the defendant's motion for leave to consider the parties' ministerial error allegations and, if necessary, to publish amended final results will be, and hereby is, granted.  Commerce may have until August 8, 2014 to complete its analysis of the ministerial allegations and may thereafter publish any amended final results in the ordinary course of business.

It is further ordered hereby that if amended final results are issued, the parties, pursuant to USCIT Rule 3(e), are hereby granted leave to file any amended summonses and, pursuant to USCIT Rule 15(a), any amended complaints, by no later than 30 days after Federal Register publication of any amended final results, and any such amended summonses and/or complaints shall be treated as within the confines of this consolidated action, such that the parties shall retain their nominally-captioned statuses following issuance of any amended final results.

That said, the court also finds, as above-intimated, that the "necessity" of this motion is the direct result of the 15-day liquidation instruction issuance policy.  Uncertainty can result in waste of institutional and litigant resources, and even one instance of this type of motion seems one too many.  *Cf.*, *e.g.*, *Vietnam Association of Seafood Exporters and Producers v. United States*, 38 CIT ___, Slip Op. 14-75 (June 26, 2014) (after receipt of ministerial error allegations, agency's response thereto issued two days after filing of summons).  On remand, therefore, in addition to

addressing the parties' ministerial error allegations, Commerce is requested to clarify whether, for

so long as its current liquidation instruction issuance policy remains in effect, it does, or will, treat

its 15-day period prior to issuance of such instructions as tolled upon the filing with it these types

of post-final-determination ministerial error allegations until such time as a proper administrative

determination on such allegations can be made, and/or amended results, if any, issued.


**So ordered.**


                                                     /s/  R. Kenton Musgrave
                                                     R.  Kenton Musgrave, Senior Judge

Dated: July 18, 2014
          New York, New York