Slip Op. 16 - 17

# UNITED STATES COURT OF INTERNATIONAL TRADE

|   |   |
|---|---|
| GOLDEN DRAGON PRECISE COPPER TUBE GROUP, INC., HONG KONG GD TRADING CO., LTD., GOLDEN DRAGON HOLDING (HONG KONG) INTERNATIONAL, LTD., and GD COPPER (U.S.A.) INC., | |
| Plaintiffs, | |
| v. | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, | Consol. Court No. 14-00116 |
| Defendant, | |
| and | |
| CERRO FLOW PRODS., LLC, WIELAND COPPER PRODUCTS, LLC, MUELLER COPPER TUBE PRODUCTS, INC, and MUELLER COPPER TUBE CO., INC., | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Granting defendant's partial consent motion for voluntary remand of final results of redetermination.]

Dated: February 22, 2016

*Kevin M. O'Brien*, *Christine M. Streatfeild,* and *Yi Fang*, Baker & McKenzie, LLP, of Washington DC, for the plaintiffs.

*Michael D. Snyder*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for the defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director. Of Counsel on the brief was *David P. Lyons*, Attorney, Office

of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Thomas M. Beline*, Cassidy Levy Kent (USA) LLP, of Washington DC, for the defendant-intervenors.

Musgrave, Senior Judge: Before this court is a partial consent motion by the defendant's Department of Commerce, International Trade Administration ("Commerce") for voluntary remand of the *Final Results of Redetermination Pursuant to Court Order*, *Golden Dragon Precise Copper Tube Group, Inc., et al. v. United States*, Court No. 14-00116, ECF No. 82 (Nov. 18, 2015) ("Remand Results"). The Remand Results were filed pursuant to *Golden Dragon Precise Copper Tube Group, Inc. v. United States*, 39 CIT ___, Slip Op. 15-89 (Aug. 8, 2015) ("*Golden Dragon II*"), remanding the final results of the second administrative review of *Seamless Refined Copper Pipe and Tube From the People's Republic of China,* 79 Fed. Reg. 23324 (Apr. 28, 2014), subsequently amended, 79 Fed. Reg. 47091 (Aug. 12, 2014) ("Final Results"). Familiarity with the case is presumed.[1] As discussed herein, the court grants Commerce's request for a voluntary remand in accordance with the following.

I. *Background*

Following publication of Commerce's amended Final Results in August 2014, Plaintiffs Golden Dragon Precise Copper Tube Group, Inc., Hong Kong GD Trading Co., Ltd., Golden Dragon Holding (Hong Kong) International, Ltd., and GD Copper (U.S.A.) Inc. (collectively

---

[1] *See Golden Dragon Precise Copper Tube Group, Inc. v. United States*, Court No. 14-00116, Slip Op. 14-85 (July 18, 2014) ("*Golden Dragon I*") (remanding to consider ministerial error allegations) and *Golden Dragon II* (remanding to further explain Commerce's selection of Thailand as surrogate value country).

"Golden Dragon") and Defendant-Intervenors Cerro Flow Products, LLC, Wieland Copper Products, LLC, Mueller Copper Tube Products, Inc., and Mueller Copper Tube Company, Inc. (collectively "Mueller") each challenged several aspects of Commerce's determination. Golden Dragon's Public Motion for Judgment on Agency Record, ECF No. 48; Mueller's Public Motion for Judgment on Agency Record, ECF No. 46. This court remanded the Final Results to Commerce for further explanation regarding the selection of Thailand as the surrogate value country in light of Golden Dragon's submissions promoting the selection of Ukraine as the surrogate value country. *Golden Dragon II* at 13-14, 16, 23.

Responding to the *Golden Dragon II* remand order of August 19, 2015, Commerce filed the Remand Results with the court on November 18, 2015, noting that the department did not receive any comments on the draft results and that there were no changes from the draft redetermination to the final redetermination. Remand Results at 1-2. Subsequently, Commerce filed the present motion for voluntary remand of the Remand Results, stating that Commerce had inadvertently neglected to notify parties of the remand proceedings by email, contrary to its standard remand practice. Defendant's Motion for Voluntary Remand ("Commerce Mot."), ECF No. 84.

Commerce's "typical practice" when commencing a remand proceeding is to create a "service list of interested parties" to receive email notifications when Commerce posts a document during the remand proceeding. Commerce Mot. at 2, 3. Commerce avers that it failed to create such a list here, and the agency posits that its "oversight" resulted in parties not receiving email notification of the draft results or of the deadline for comment submission. *Id*. at 2. Specifically, Commerce is moving for a voluntary remand to (1) permit parties to comment on a draft of the

remand redetermination, and (2) permit Commerce to address those comments in the final remand redetermination. *Id.* at 2. In support, Commerce explains that a remand will allow the agency to comply with "its important policy of giving parties the opportunity to meaningfully participate in the administrative proceeding". *Id.* at 3.

Defendant-Intervenor Mueller opposes the motion. Response in Opposition to Commerce's Motion for Voluntary Remand ("Mueller Opp'n"), ECF No. 85.[2] Golden Dragon filed a brief in support of Commerce's motion one day later. Response to Defendant's Motion for Voluntary Remand ("GD Resp."), ECF No. 86.

## II. *Jurisdiction and Standard of Review*

Jurisdiction is here pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. §1516a(a)(2)(B)(iii) and 28 U.S.C. §1581(c). The court will uphold an administrative determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. §1516a(b)(1)(B)(i).

## III. *Discussion*

Mueller asserts several arguments opposing Commerce's remand request. The main thrust of Mueller's argument contends that Commerce's remand request is not appropriate under the prevailing remand standards and that therefore the remand request is premature. Mueller Opp'n at 2-3. This argument is unpersuasive. In *SKF USA Inc. v. United States*, the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") held that when a court reviews an agency action, "the agency may request a remand (without confessing error) in order to reconsider its previous position."

---

[2] Mueller's opposition brief does not include page numbers. For purposes of this opinion, the court will use the pagination as determined by the CMECF system for page references herein.

*SKF USA Inc. v. United States*, 254 F.3d 1022, 1027-30 (Fed. Cir. 2001) ("*SKF*"). The requesting agency may wish to "consider further the governing statute, or the procedures that were followed. [The agency] might simply state that it had doubts about the correctness of its decision". *Id*. at 1029. When an agency requests a remand without confessing error, "the reviewing court has discretion over whether to remand." *Id*. (internal citations omitted). A remand may be refused if the agency's request is "frivolous or in bad faith" but a remand is "usually appropriate" if "the agency's concern is substantial and legitimate." *Id*. Further, the court has considered Commerce's concerns to be substantial and legitimate when (1) Commerce provides a compelling justification, (2) the need for finality does not outweigh the justification, and (3) the scope of the remand request is appropriate. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 37 CIT ___, 882 F. Supp. 2d 1377, 1381 (2013) ("*Ad Hoc Shrimp*"), referencing *Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 29 CIT 1516, 1521-25, 412 F. Supp.2d 1330, 1336-39 (2005) ("*Shakeproof*").

    While the court agrees with Mueller that in its motion Commerce does not expressly invoke one particular remand situation, Commerce states that it "has not concluded that it[s] decision is incorrect on the merits" and that its basis for requesting a remand is "most similar" to a request to reconsider its previous position without confessing error. Commerce Mot. at 2-3. The remand request encompasses Commerce permitting parties to comment on the draft results and later addressing those comments in the final remand results. *Id*. at 2. Commerce specifically states that this request does not stem from an admission of error. *Id*. at 3. This justification "falls neatly" into the fourth situation prescribed by the *SKF* Court. *SKF*, 254 F.3d at 1029. Further, Mueller does not persuade the court of any frivolity or bad faith on Commerce's part. *See, e.g.,* Mueller Resp; *cf.*

Commerce Mot. at 3 ("Commerce is requesting the remand in good faith . . . to comply with its important policy of giving parties the opportunity to meaningfully participate in the administrative proceeding."). Therefore, Commerce's request is appropriate under the *SKF* standard.

Further, Commerce's remand request is supported by a "substantial and legitimate" concern. *SKF*, 254 F.3d at 1029; *Ad Hoc Shrimp,* 37 CIT at ___, 882 F. Supp. 2d at 1381. Commerce is concerned that its failure to follow "typical practice" resulted in the lack of party comments on the draft results. Commerce Mot. at 1-2. Commerce's justification for the remand request is compelling as it has been substantiated by Golden Dragon's stated intent to file comments but for Commerce's "oversight". GD Resp. at 2. The need for finality does not outweigh Commerce's justification for the remand request because the agency has not yet had the opportunity to consider party comments on its draft results. Mueller argues that this remand will result in "two rounds of briefing (one before [Commerce] and another before the [c]ourt)." Mueller Opp'n at 3. However, a "brief remand" to consider comments which are allegedly forthcoming during the normal course of Commerce's proceedings is not outweighed by Mueller's "concern": the argument in fact describes what the usual remand process entails. Moreover, "the need for an agency to adequately address a seeming departure from past practice -- irrespective of the cause of such departure -- is itself a significant concern weighing in favor of voluntary remand."[3] *Shakeproof*, 29 CIT at 1523,

---

[3] Commerce's "typical practice" of using an email service list to keep interested parties informed of updates to the remand proceeding may have risen to the level of an agency action which has become an established "agency practice" that, without notification of change, would lead a party to reasonably expect adherence to the practice. *See Ranchers-Cattlemen Action Legal Foundation v. United States*, 23 CIT 861, 884-85 (1999). Without further briefing on the specific issue, the court is unprepared to categorically state that Commerce's remand proceeding warrants such a characterization, but the likelihood of that determination supports the court's position here.

412 F. Supp. 2d at 1337. Finally, the scope of the request, permitting parties to comment on the draft redetermination results and to respond to those comments in the final redetermination, is appropriate. *See, e.g., Ad Hoc Shrimp*, 37 CIT at ___, 882 F. Supp. 2d at 1381 (granting a remand request to address "certain information addressed to a discrete material issue" after finding said scope "reasonable and appropriate"); *cf. Corus Staal BV v. United States*, 29 CIT 777, 781-82, 387 F. Supp. 2d 1291, 1296-97 (2005) (Commerce did not give sufficient reason for remand and the court exercised discretion to deny remand request) (internal citations omitted). Accordingly, the court finds that Commerce's request for a voluntary remand is based on a substantial and legitimate concern.

        Mueller asserts several other arguments for denying Commerce's motion, but none are persuasive here. Mueller contends that granting the remand request would be an unnecessary waste of the parties' resources. Mueller Opp'n at 3. As discussed above, Mueller's concern for expediency is well-taken, but the court perceives no reason to depart from the normal remand process involving notice and comment. It does not appear that the remand will result in an unreasonable delay, but it will enable Commerce to continue to follow its typical practice of considering party comments in draft result redeterminations.

        Mueller further contends that there is no indication that Golden Dragon wished to comment on the draft results prior to publication of the final Remand Results.[4] Mueller Opp'n

---

[4] Mueller asserts that Golden Dragon "should have been looking" for the draft redetermination results prior to the court-imposed deadline. Mueller Opp'n at 6. The court agrees that given the unchanged deadline for Commerce to file the Remand Results, Golden Dragon presumably knew that draft results would likely be available for comment prior to the Remand Results filing deadline. However, the court also observes that given Commerce's break with its
(continued...)

at 3, 6. However, Mueller's contention is dispelled by Golden Dragon's stated intent to file comments on the draft results. GD Resp. at 2. Golden Dragon's averments affirm Commerce's concern that Golden Dragon intended to file comments and was not notified in the usual manner in order to do so. *Id.*; Commerce Mot. at 2.

        Mueller also attempts to reframe Commerce's motion for voluntary remand as a "motion to correct for a procedural due process defect in its proceeding." Mueller Opp'n at 4. Mueller argues that there is no statutory duty to publish a draft remand, and that Commerce is not statutorily required to permit parties to comment on the draft remand results. *Id*. While Mueller appropriately characterizes Commerce's remand commentary process as not statutorily required, Commerce is permitted to establish remand procedures encouraging parties to meaningfully participate in the administrative proceeding. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Def. Council, Inc.*, 435 U.S. 519, 543-544 (1978) ("absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties") (internal quotations omitted). Notably, Commerce's motion does not attempt to establish such a duty, nor does it seek a remand based on a defect in its procedural due process. Commerce has not concluded that its remand is based on any error, procedural or otherwise.

---

    [4] (...continued)
"typical practice" and Golden Dragon's averment that it intended to file comments on the draft results, coupled with the further averment that Golden Dragon was never made aware of the draft results through its later-in-time communications with Commerce (GD Resp. at 3), this case would be best served by permitting Commerce to solicit and address comments to the draft results by interested parties as requested by Commerce.

Consol. Court No. 14-00116							Page 9

Commerce Mot. at 3. Instead, Commerce requests a remand squarely within the bounds afforded by *SKF*. Mueller's argument is therefore unpersuasive.

Finally, the court is mindful of the unspoken elements of the exhaustion doctrine underlying this motion. The exhaustion doctrine generally provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003), quoting *McKart v. United States*, 395 U.S. 185, 193 (1969) (internal quotations and citations omitted). It is a well-settled principle of administrative law that a "reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action", *Unemployment Compensation Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946), and the court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1381 (Fed. Cir. 2013), quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (citations omitted). Further, the administrative remedy for challenging remand results generally requires filing comments on draft results at the agency level. *Taian Ziying Food Co., Ltd. v. United States*, 37 CIT __, 918 F. Supp. 2d 1345, 1361 (2013), referencing *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (failure to raise issue in comments to draft remand was failure to exhaust administrative remedies).

Here, the court finds Commerce's request for a remand both appropriate and reasonable. Golden Dragon presumably did not exhaust its administrative remedy of filing

comments to the draft remand results because it had not received the typical remand proceeding email notifications from Commerce due to Commerce's "oversight". In this instance, in the interest of protecting administrative authority over determinations and promoting judicial economy[5], the court considers Commerce's administrative concern to be worthy of remand.

### IV. *Conclusion*

Granting a remand to solicit and incorporate comments from interested parties in compliance with Commerce's typical remand procedure is appropriate here because it will conserve judicial resources and permit Commerce to comply fully with its administrative remand procedures.

The final results of redetermination shall be due March 23, 2016. After filing thereof with the court, the parties shall confer and report on proceeding further on the case, including a proposed scheduling order for further comments, if necessary.

**So ordered.**

Dated: February 22, 2016                             /s/ R. Kenton Musgrave
         New York, New York                          R. Kenton Musgrave, Senior Judge

---

[5] *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (the exhaustion doctrine serves the two main purposes of promoting judicial efficiency and protecting administrative agency authority by "discouraging disregard of the agency's procedures") (internal quotations and brackets omitted).